UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICHARD CURRY, | Case No.: 5:11-CV-04662 EJD |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MATIVIDAD MEDICAL CENTER; COUNTY OF MONTEREY; and DOES 1–50, | |
| Defendants. | **[Re: Docket Nos. 23, 24]** |

In this employment-related action brought by Plaintiff Richard Curry ("Plaintiff" or "Curry") against Defendants Natividad Medical Center and the County of Monterey (collectively "Defendants"), presently before the Court are the parties' cross-motions for summary judgment. The Court found these matters appropriate for decision without oral argument pursuant to Local Civil Rule 7–1(b), and previously vacated the corresponding hearing date. Having fully reviewed the parties' papers, the Court will grant Defendants' Motion for Summary Judgment, and will deny Plaintiff's Motion for Summary Judgment.

1

## I. Background

On or around May 30, 2008, Plaintiff began to be employed by Natividad Medical Center ("NMC"), a department wholly owned and operated by the County of Monterey. See Decl. of Gerald A. Emanuel Ex. A. Plaintiff was hired as a temporary Management Specialist in the Information Systems Department; his letter of hire states that his hourly rate of pay would be $36.236. Id. On or around August 15, 2009, Plaintiff became a permanent employee as a Hospital Network and Systems Engineer also in the Information Systems Department. Id. Ex. B. His letter of hire for this position states that his hourly rate of pay would be $37.081, id.; he received a biweekly salary of $2966.48, Decl. of Stacey Scherer ¶ 3. On or around August 14, 2010, Plaintiff received a raise in his salary to a biweekly level of $3129.20. Id.

Plaintiff was placed on leave pending an investigation between November 18, 2010 and December 3, 2010, and was on medical leave between December 4, 2010 and January 3, 2011. Id. ¶ 4. On July 13, 2011, Plaintiff was again placed on leave pending an investigation; he took medical leave thereafter and never returned to work at NMC. Id. On or around March 16, 2012, NMC terminated his employment. Id.

On August 12, 2011, Plaintiff filed suit against Defendants in Monterey County Superior Court alleging four causes of action. See Compl., Notice of Removal Ex. A, Docket Item No. 1. Plaintiff brought forth three claims of California Labor Code violations for failure to pay overtime, failure to pay meal and rest breaks, and pay stub violations as well as one federal claim for failure to pay overtime pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, et seq. This lawsuit was removed to this Court pursuant to 28 U.S.C. § 1441.

## II. Legal Standard

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the

2
Case No.: 5:11-CV-04662 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134–36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. Discussion

#### A. State Law Claims (First, Third, and Fourth Causes of Action)

The parties have agreed that, due to NMC's status as a department of Monterey County, the California Labor Code provisions pertaining to breaks and overtime are not viable causes of action in this matter. See California Corr. Peace Officers' Ass'n v. State, 189 Cal. App. 4th 849, 862 (2010) (holding that state and local governments are exempted from the state overtime rules

3

Case No.: 5:11-CV-04662 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

prescribed in the California Labor Code and California Code of Regulations). As such, prior to the filing of the cross-motions for summary judgment, the parties had stipulated to dismiss all causes of action brought under the California Labor Code. See Joint Case Management Statement ¶ 5, Docket Item No. 18; see also Pl.'s Opp'n to Def.'s Mot. for Summ. J. 9 ("Plaintiff herein concedes that the California Labor law cases do not apply to this matter [and] agrees to a dismissal of the First, Third, and Fourth Causes of Action."). Accordingly, the Court finds that summary judgment in Defendants' favor on the First, Third, and Fourth Causes of Action is appropriate.

### B. Federal Claim under the Fair Labor Standards Act (Second Cause of Action)

The remaining claim—the Second Cause of Action—is Plaintiff's claim of failure to pay overtime pursuant to FLSA. Defendant moves for summary judgment on this claim arguing, inter alia, that during the course of his employment at NMC, Plaintiff qualified as a computer employee subject to an exemption from the requirements of the FLSA. Plaintiff moves for summary judgment on this claim arguing, inter alia, that he was not an exempt employee and is therefore entitled to the overtime pay he allegedly did not receive.

The FLSA requires that employers pay covered employees at least the federal minimum wage for all hours worked, and time and one-half for all hours worked in excess of forty hours in a single work week. 29 U.S.C. §§ 206(a)(1), 207(a)(1). However, executive, professional, and administrative employees are exempt from the FLSA's minimum wage and overtime requirements. See 29 U.S.C. § 213 (describing exempt jobs). To be considered exempt, an employee must satisfy three tests: (1) the salary basis test, requiring that the employee receive "a predetermined amount" of compensation that is "not subject to reduction because of variations in the quality or quantity of the work performed" by the employee; (2) the salary level test, requiring that the employee earn at least $455 per week, equivalent to $23,600 per year; and (3) the duties test, which focuses on whether the employee performs the "primary duty" of an executive, professional or administrative

4
Case No.: 5:11-CV-04662 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

employee.[1] 29 C.F.R. §§ 541.602(a), 541.600(a), 541.700(a). In determining an employee's primary duty, courts look to "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700. The amount of time an employee spends performing exempt work can be a "useful guide" in determining whether his primary duty consists of exempt work. Id. "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." Id.

Defendants argue that Plaintiff qualifies as an exempt computer employee not subject to the FLSA. An exempt computer employee is

> any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is—
>
> (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
> (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour.

29 U.S.C. § 213(a)(17); see also 29 C.F.R. § 541.400(b); Gofron v. Picsel Techns., Inc., 804 F. Supp. 2d 1030, 1042 (N.D. Cal. 2011). Because the computer employee exemption applies to a "computer systems analyst, computer programmer, software engineer, or other similarly skilled worker," 29 U.S.C. § 213(a)(17), an employee's job duties, not his job title, determine whether the exemption applies. 29 C.F.R. § 541.400 ("Because job titles vary widely and change quickly in the computer industry, job titles are not determinative of the applicability of [the computer employee] exemption."); 69 Fed.Reg. at 22,160 ("Where the prescribed duties tests are met, the [computer]

---

[1] Plaintiff meets the first two requirements in that, as noted, he received a predetermined annual salary well in excess of $23,600.

5
Case No.: 5:11-CV-04662 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

exemption may be applied regardless of the job title given to the particular position."); see also Clarke v. JPMorgan Chase Bank, N.A., No. 08 CIV. 2400 CM/DCF, 2010 WL 1379778, at *15–17 (S.D.N.Y. Mar. 26, 2010).

The Court also notes that Section 213(a)(17), adopted by Congress in 1996, expanded the definition of a computer employee for the purposes of the FLSA exemption. See Small Business Job Protection Act of 1996, Pub. L. No. 104–188, § 2105, 110 Stat. 1755, 1929 (codified at 29 U.S.C. § 213(a)(17)). See 69 Fed. Reg. at 22,159. "[T]he exemption in Section 213(a)(17) broadened the coverage of computer services personnel from that included in the prior Section 213(a)(1) computer professional exemption and the 1991 [Department of Labor] regulations in three significant ways." Bobadilla v. MDRC, No. 03 CIV. 9217, 2005 WL 2044938, at *6 n.5 (S.D.N.Y. Aug. 24, 2005). "Perhaps most notably, it eliminated the requirement that the employee's work require the exercise of independent judgment and discretion." Clarke, 2010 WL 1379778, at *17 (internal citations and quotation marks omitted). It also dispensed with "any reference to educational requirements," and the requirement that the employee must "have achieved a level of proficiency in the theoretical and practical application of a body of highly specialized knowledge." Bobadilla v. MDRC, 2005 WL 2044938, at *6 n.5 (internal citations and quotation marks omitted).

After examining the evidence and materials supplied by the parties, the Court finds that Plaintiff's employment falls within the computer employee exemption. Plaintiff's primary duties included a combination of the duties covered in 29 U.S.C. 213(a)(17). Although Plaintiff contends that he spent most of his time—eighty percent—working on computer and server repair and functionality problems for individual employees, he was of value to NMC in more than just a non-exempt trouble-shooting support employee and was worth approximately $80,000 per year to NMC after he received his salary raise in August 2010. Cf. Bobadilla, 2005 WL 2044938, at *7. Before he was hired by NMC, Plaintiff had listed that he was experienced with selecting, testing, and implementing networks and other computer systems. See Decl. of William Litt Ex. A. Based on

6

Case No.: 5:11-CV-04662 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NMC's job posting, Plaintiff was hired to be responsible for the "design, implementation and maintenance of NMC's information systems infrastructure and all associated equipment, data, related software and applications." Id.

Defendants have provided a list of the tasks and duties Plaintiff was responsible for during his time as NMC's Information Systems Department's Management Specialist and later as a Hospital Network and Systems Engineer. See Def.'s Mot. for Summ. J. 2–4. The list below summarizes some of the duties that Plaintiff undertook during his employment pertinent to the determination about whether Plaintiff qualifies as an exempt computer employee:

- Hardware and software procurement, which encompasses determining which vendors are capable of providing equipment or software meeting NMC's specifications, obtaining price quotes from vendors, determining whether alternative products would meet NMC's needs, consulting with colleagues and supervisors regarding which products to acquire, acquiring hardware and software as needed, and thoroughly documenting the transactions;
- Server and network infrastructure maintenance provisioning, which consists of locating sources and obtaining price quotes from vendors for existing equipment with support contracts that were due to expire, ensuring these vendors are qualified, consulting with colleagues and supervisors regarding which vendors to retain, and documenting the service procurement process;
- The Virtualization Project, using VMWare, which requires an IT Systems Engineer to conduct research and investigation of the feasibility and compatibility of turning a physical server into a virtual server by utilizing virtualization software, and ensuring that the conversion will not have any negative impact on the functionality and performance of the server;
- Server builds, meaning Windows server design and provisioning, including deploying from VMWare templates to create new virtual servers and assigning them IP addresses and hostnames, and working with application vendors to perform remote installation, which

7
Case No.: 5:11-CV-04662 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

requires design and architecture skills to properly build out a new server with the configuration in terms of memory, computing power, network connectivity, and storage architecture in order to meet the intended purpose of the server, usually in supporting new software implementation in a project;

- Lab equipment installs, and support of the RALS system, which entails working with the vendor to configure a Glucometer to establish network connectivity from the glucose measuring device to the server; anti-virus deployment (system security) for the RALS system;

- Providing helpdesk personnel with escalation support, which entails providing guidance and support to lower level network technicians for user issues exceeding the competency of the lower level technicians, such as workstation hardware failure, workstation software issues, and login issues;

- Administering NMC's Citrix implementation (servers and software that allow users to access NMC's network from home or elsewhere outside NMC).

See Def.'s Mot. for Summ. J. 2–4; Decl. of Jim Fenstermaker ¶ 4; Decl. of Kit Sun ¶ 4. This list of Plaintiff's on-the-job duties has been confirmed by NMC's Chief Information Officer (Jim Fenstermaker) and NMC's Information Technology Operations Manager (Kit Sun), both of whom supervised Plaintiff during his employment at NMC. See Decl. of Jim Fenstermaker ¶ 4; Dec. of Kit Sun ¶ 4. Plaintiff's duties include network analysis, testing, configuration, and modification as important parts of Plaintiff's employment roles as both a Hospital Network and Systems Engineer as well as a Management Specialist. Cf. Bobadilla, 2005 WL 2044938, at *7 (finding that "network analysis, design, configuration, and modification" are the types of duties that characterize exempt computer employees under Section 213(a)(17)). This demonstrates that Plaintiff was more than a helpdesk staffer and instead was a skilled employee as described under the computer employee exemption. The job duties and responsibilities Plaintiff carried out were similar to those of the employees the Clarke and Bobadilla courts found were exempt computer employees. Like in those

8

Case No.: 5:11-CV-04662 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

cases, Plaintiff provided escalation support to helpdesk personnel and his supervisors and colleagues consulted with him on critical projects. In addition, the record indicates that, similar to the Clarke and Bobadilla employees, Plaintiff provisioned and implemented various servers and programs onto NMC's computer system in the administrative and medical departments.

Plaintiff does not attempt to dispute that he was responsible for the job duties listed by Defendants and verified by his supervisors; nor does Plaintiff contend that these duties do not fit those of an exempt computer employee under Section 213(a)(17). Plaintiff has not provided sufficient evidence showing that his job duties did not reflect those of an exempt computer employee. Cf. Gofron, 804 F. Supp. 2d at 1042. Plaintiff does contend that the work he performed was different from the duties and responsibilities listed on NMC's job description of a Hospital Network and Systems Engineer. However, as noted, it is the actual job duties the employee performed—not the job title or description—that determines whether an employee falls under the computer employee exemption. See 29 C.F.R. § 541.400. As such, the Court finds that Plaintiff has failed to sufficiently rebut the descriptions of Plaintiff's duties that Defendants have provided.

Plaintiff also argues that his lack of formal education and training in computer engineering, programming or analytics confirms his contention that he does not fall under the exemption. The Court rejects this argument and refers to the removal of both the "reference to educational requirements" and the requirement that the employee must "have achieved a level of proficiency in the theoretical and practical application of a body of highly specialized knowledge" in the statutory language of the computer employee exemption. Bobadilla v. MDRC, 2005 WL 2044938, at *6 n.5. These absences are exemplary of the broadening of the "coverage of computer services personnel" by the current computer employee exemption. See 69 Fed. Reg. at 22,159. As such, Plaintiff's argument regarding his formal education and training has no bearing on the determination as to whether he was an exempt computer employee.

Ultimately, and dispositive of the current cross-motions for summary judgment, is Plaintiff's failure to rebut the evidence Defendants have provided that show that Plaintiff engaged

9

Case No.: 5:11-CV-04662 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

primarily in duties and responsibilities that fall under the computer employee exemption. As such, the Court finds that Plaintiff qualifies as a computer employee subject to the FSLA exemption. Accordingly, summary judgment on the Second Cause of Action in Defendants' favor is appropriate.

## IV.    Conclusion and Order

For the aforementioned reasons Defendants' Motion for Summary Judgment is GRANTED in its entirety; Plaintiff's Motion for Summary Judgment is DENIED.

Since this order effectively resolves this case, all previously-set deadlines and hearings are VACATED. Judgment shall be entered in favor of Defendants and the clerk shall close this file.

**IT IS SO ORDERED.**

Dated: May 28, 2013


_____
EDWARD J. DAVILA
United States District Judge